DIAMON, Appellant, vs. IRON RIVER LUMBER COMPANY, Respondent.

*January 28—February 18, 1913.*

*Master and servant: Injury from breaking of wagon wheel: Negligence: Knowledge of defect: Evidence: Direction of verdict.*

1. The breaking down of a wagon wheel under an ordinary load upon a smooth, level road while the wagon was moving at a moderate speed was evidence from which a jury might infer that the wheel was defective; but to render the owner of the wagon liable for an injury sustained by an employee who was walking beside the wagon and driving the team at the time of such breakdown, it must be shown that such owner knew, or in the exercise of ordinary care ought to have known, of the defect.

2. Upon the evidence in this case (including spokes from the broken wheel), which failed to show that there was any obvious defect and showed on defendant's part an annual inspection of its wagons and some care in keeping them in repair, it is *held* that no negligence on the part of defendant was shown and that a verdict in its favor was properly directed.

APPEAL from a judgment of the circuit court for Douglas county: FRANK A. ROSS, Circuit Judge. *Affirmed.*

The appeal is from a judgment rendered upon a directed verdict.

The plaintiff while in the employment of defendant as a teamster on March 6, 1911, sustained a personal injury in consequence of a wheel of defendant's wagon giving way and breaking down, thus precipitating a load of lumber upon the plaintiff. The plaintiff was walking alongside the wagon driving a team which, with a lead team driven by another employee, was drawing the wagon in question. There was evidence tending to show that there was no unusual load upon the wagon, that the horses were moving slowly, and that the ground at the place where the wagon broke down was frozen and the snow and ice packed down, making a smooth, level road without ruts. This road was in the defendant's lumber

yard, and the plaintiff was engaged in hauling the lumber in question from defendant's mill to this lumber yard. The defendant had in use for this purpose several hundred of such wagons and the teamster did not use the same wagon continually. He took a pole and two front wheels, went to a certain place at the mill, and found a load ready for him upon a cart. He hitched his two front wheels onto this loaded cart, making a four-wheeled vehicle, pulled the load out into the lumber yard, and left it there to be unloaded. He detached this front part and went back to the mill with it for another load which he would find there ready upon another cart, and he repeated the operation. It was one of these back wheels that broke, causing the injury, and there is no evidence to show that the plaintiff had prior to the time of his injury used these back wheels. Immediately after plaintiff's injury his son went down to the yard to get some of the broken parts of the wheel and took out of the crushed mass three spokes, which was all that were entirely loose so that they could be easily removed. These spokes were produced on the trial and put in evidence and are before this court. They are old and broken. Two of them are sound, tough oak, and one contains an old crack and is somewhat unsound, and they are quite well covered with paint, but neither of them indicates that there existed any obvious defect in the wheel. The plaintiff served notice upon defendant to produce and have at the trial to be offered in evidence the remainder of the broken wheel, but the defendant did not produce it. An experienced wagon maker as a witness for plaintiff on the trial examined these spokes and testified that one was a poor piece of timber rotted about five eighths of an inch deep in one place, and gave his opinion that it must have been at least fifteen years in use in the wagon. This five eighths of an inch must have been arrived at by taking the depth of an old crack at the junction of the spoke with the hub and not readily discoverable by ordinary inspection. The defendant introduced tes-

timony that about the end of each year they make an inspection of these wagons, count them up to see how many they have, and if any are broken they send those out of repair to the shop.   They look them over to see whether they are liable to break down or need repairs.   They also have a man to grease trucks when the mill is running, and if this man finds anything that is broken he is supposed to set it out.   In addition to this yearly inspection, at any time the witness sees a break or thinks the wagon is going to break he tells them to set it out and take it to the shop.   He does not mean to say that he makes a close inspection, simply looks at them, and if one is broken or ought to go to the blacksmith shop he sends it down.   They have a wagon maker whose duty it is to repair the broken wagons.   Of the 350 wagons there are generally about 100 broken, and they operate with twelve or thirteen teams.   At the close of the testimony the learned circuit court directed a verdict for defendant, apparently upon the ground that there was no negligence on the part of the defendant shown.

*Victor Linley*, for the appellant.

For the respondent the cause was submitted on the brief of *Solon L. Perrin*.

TIMLIN, J.   The breaking down of the wheel under an ordinary load upon a smooth, level road while the wagon was moving at a moderate gait was evidence from which the jury might infer that the wheel was defective.   *Guse v. Power & M. M. Co.* 151 Wis. 400, 139 N. W. 195.   But the fact, standing alone, that the appliance was defective fails to establish that the defendant was negligent.   *Guse v. Power & M. M. Co., supra.*   It must also be shown that the defendant knew or ought in the exercise of ordinary care to have known of this defect.   This latter necessary element of the defendant's liability is not supplied by the appearance of the spokes in evidence nor by the opinion evidence mentioned, taken in con-

nection with our own observation of this evidence. Two spokes as stated were unquestionably sound and strong, and the third had a crack or defect at the junction of the spoke with the hub not extending across, and all were well covered with a heavy coat of paint. The last mentioned spoke was of inferior, sappy wood and somewhat decayed, but not so that the defect was obvious. There was also evidence on the part of the defendant showing an annual inspection of these wagons as stated and also some care in keeping them in repair. No negligence on the part of the defendant having been shown, a verdict was properly directed in its favor. *Boelter v. Ross L. Co.* 103 Wis. 324, 79 N. W. 243, is like the instant case, except that there the defendant's foreman was informed, on the day prior to the injury in question, that the wagon was defective.

*By the Court.*—Judgment affirmed.